**BENJAMIN HAILE, OSB #04066**
ben@portlandlawcollective.com
Portland Law Collective LLP
1130 SW Morrison St., Suite 407
Portland, OR 97205
Tel: 503-228-1889
Fax: 503-223-4518
        Attorney for the Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| LOREN KRUESI & VALERIE KRUESI | Case No. |
| Plaintiffs, | **COMPLAINT** |
| vs. | Unreasonable Search and Seizure Without Valid Warrant or Other Authority (Fourth Amendment), Due Process Violation, Trespass, Conversion, Intentional Interference with Economic Relations, Negligence |
| LINN COUNTY, a municipal entity; BRUCE DAVIS; DAVID SNIPPEN; and RICK CAMBELL | |
| Defendants. | DEMAND FOR JURY TRIAL |

## COMPLAINT

## INTRODUCTION

### 1.

Loren Kruesi owns the property located at 35871 Jefferson Scio Drive in Jefferson,

Oregon. There are two farms on that property that legally grow medical marijuana for the

Oregon Medical Marijuana Program (OMMP). One of the farms is administered by Mr. Kruesi

and is called the Jefferson Collective.  At all material times, that farm grew marijuana for 12 patients and was allowed to have up to 72 mature medical marijuana plants.  Mr. Kruesi is a patient and grower for himself and a grower only for his mother Delores Hattan, and for Paul Davis.  There were other patient-growers on the Jefferson Collective farm.  The Jefferson Collective farm had 70 mature medical marijuana plants growing on it.  A second farm operated independently on the property.  That farm grew marijuana for 4 patients.  At the time of the incident, the combined total of registry identification cards for covered patients and pending applications for registry identification cards for additional patients for both farms was 15, allowing for 90 plants.  (As used in this Complaint, and as defined in the Oregon Medical Marijuana Act (OMMA), the term "registry identification card" means a document issued by the OMMA that identifies a person authorized to engage in the use of medical marijuana.)

2.

On September 12, 2012, Deputy Bruce Davis and Detectives David Snippen and Rick Campbell from Linn County Sheriff's Department searched Mr. Kruesi's property.  The officers had a warrant to search one residence at that address for illegally grown marijuana.  The warrant was attained based on investigation done during the course of a flyover the property and based on inaccurate information provided by the Oregon Medical Marijuana Program.  At the beginning of the service of the warrant, the officers conducted a preliminary safety search, --also known as a "sweep" -- of the property and realized that there were multiple occupied residences on the property.  At that point, the officers knew that the warrant they possessed lacked the particularity required by the Fourth Amendment to the U.S. Constitution and Article 1, Section 9 of the Oregon Consstitution.  They should have stopped their search.  The officers could not rely on the warrant in good faith.

3.

During the initial sweep of the property, or shortly thereafter, Detective Campbell wrongfully seized a receipt book from Mr. Kruesi's residence. In that receipt book was a shopping list that Mr. Kruesi had written for an individual that was seeking advice on growing his own medical marijuana.

4.

Before a thorough search of the property began, Loren Kruesi informed the officers that the marijuana that was growing on the property was being legally grown and that he had the appropriate paperwork for it, and he provided the officers with paperwork for the eleven confirmed registry identification cards and four pending applications for registry identification cards.

5.

The officers repeatedly threatened Loren Kruesi and Valerie Kruesi during the four or more hours that the property was searched. They took more than 400 photographs during the search. They detained Loren Kruesi, Valerie Kruesi, and other residents of the property during the search. They arrested Loren Kruesi.

6.

Mr. Kruesi was charged with two felony counts of Unlawful Manufacture of Marijuana and two felony counts of Unlawful Delivery of Marijuana. One count for each of the charges were listed as commercial offenses. Each of the charges was for a violation of Oregon law. On April 25, 2014, Judge Daniel Murphy of the Circuit Court for Linn County allowed a motion to suppress evidence because the warrant that the officers relied on to search Mr. Kruesi's property lacked sufficient particularity. The charges against Mr. Kruesi were dismissed on July 9, 2014.

7.

On the day of the search, the deputies seized 18 marijuana plants from Mr. Kruesi. Several other marijuana plants were seized from the property that were not being grown by members of the Jefferson Collective.

8.

Mr. and Mrs. Kruesi bring this action under 42 U.S.C. § 1983 against Deputy Davis and Detectives Snippen and Campbell for unreasonable search and seizure without a valid warrant or other authority.

9.

Mr. and Mrs. Kruesi also bring a claim against Deputy Davis and Detectives Snippen and Campbell for violating their due process rights by destroying the seized plants without a hearing.

10.

Mr. and Mrs. Kruesi also bring a state law claim against Linn County for the actions of its officers Davis, Snippen, and Campbell for trespassing on the property of Mr. Kruesi.

11.

Mr. Kruesi also brings claims for conversion and for intentional interference with economic relations between Mr. Kruesi and the OMMP patients for whom he grew medical marijuana, against Linn County for the actions of its officers, Davis, Snippen, and Campbell.

12.

Finally, Mr. and Mrs. Kruesi bring a claim for negligence against Linn County for the conduct of sheriff's deputies that caused Mr. and Mrs. Kruesi to suffer an unlawful search of their residence and premises and unlawful seizure of their property, and caused Mr. Kruesi to be unlawfully arrested.

## JURISDICTION AND VENUE

### 13.

This court has jurisdiction over the subject matter of this Complaint under under 28 U.S.C. §§ 1331, and 1343(a)(3).  The Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C § 1367.

### 14.

Venue is proper in the District of Oregon, because all of the events giving rise to this claim occurred in this judicial district.  28 U.S.C. § 1391(b).

## THE PARTIES

### 15.

At all material times the plaintiff, Mr. Kruesi, was a resident of Jefferson, Oregon.

### 16.

At all material times the plaintiff, Mrs. Kruesi, was a resident of Jefferson, Oregon.

### 17.

At all material times, Defendant Deputy Bruce Davis (hereinafter Deputy Davis), was working under color of law for Linn County as a member of the Linn County Sheriff's Department.  Deputy Davis is sued in his individual capacity.

### 18.

At all material times, Defendant Detective David Snippen (hereinafter Detective Snippen), was working under color of law for Linn County as a member of the Linn County Sheriff's Department.  Detective Snippen is sued in his individual capacity.

19.

At all material times, Defendant Detective Rick Campbell (hereinafter Detective Campbell), was working under color of law for Linn County as a member of the Linn County Sheriff's Department. Detective Campbell is sued in his individual capacity.

20.

Defendant Linn County is a municipal entity, organized under the laws of the State of Oregon, with the capacity to sue and be sued. The Linn County Sheriff's Department is a department or division of the County. The County is the legal and political entity responsible under state law for the tort of trespass by its employees acting within the course and scope of their employment. The County has a statutory duty to defend and indemnify Deputy Davis and Detectives Snippen and Campbell for conduct in the course and scope of their employment.

**THE FACTS**

21.

Loren Kruesi owns the property located at 35871 Jefferson Scio Drive in Jefferson, Oregon. There are two farms on that property that legally grow medical marijuana for the Oregon Medical Marijuana Program (OMMP). One of the farms is administered by Mr. Kruesi and is called the Jefferson Collective. That farm grew medical marijuana for 12 patients who had valid registry identification cards or pending applications under the Oregon Medical Marijuana Act (OMMA). The Jefferson Collective was allowed to have 72 medical marijuana plants. Mr. Kruesi is a patient-grower for himself, a grower for his mother Delores Hattan, and a grower for Paul Davis. There were other patient-growers in the Jefferson Collective. The Jefferson Collective farm had 70 mature medical marijuana plants growing on its farm. A

second farm also operated independently on the property. That farm grew medical marijuana for three patients. At the time of the incident, the combined total of covered patients for both farms was 15, allowing for 90 plants. Four applications, out of the 15, were pending due to the long delay in processing applications at OMMP.

22.

On August 30, 2012, Deputy Davis and Detectives Snippen and Campbell flew over Linn County in a privately owned helicopter while they looked for outdoor marijuana gardens. In addition to other locations that contained marijuana plants, Deputy Cambpell, Deputy Davis, and Detective Snippen saw marijuana plants growing in two fenced in areas on Mr. Kruesi's property. Detective Snippen took digital photographs of the plants and surrounding properties including Mr. Kruesi's property.

23.

Deputy Davis reviewed the photographs on September 6, 2012. He realized that the plants that were growing on Mr. Kruesi's property were in two different fenced in areas. Deputy Davis used Linn County Assessor's Office GIS maps to identify the property in the pictures as 35871 Jefferson Scio Drive, Jefferson, Linn County, Oregon.

24.

Mr. and Mrs. Kruesi live at 35871 Jefferson Scio Drive. Mr. Kruesi owns the property. The Kruesi's live in a triple-wide mobile home on the property. There are two other residences on the property.

25.

Under the OMMA, growers do not own the marijuana plants, rather the patients do. Growers are entitled, under the OMMA, to receive compensation for the costs of supplies and

utilities associated with the production of the marijuana for registered patients under ORS 475.304(7).

26.

On September 6, 2012, Deputy Davis sent a fax to the Oregon Medical Marijuana Program (OMMP) to request information on the locations that had been noted on August 30, 2012, including the property belonging to Mr. Kruesi. Deputy Davis was contacted later that day by Meagan Lockwood, an employee of OMMP. Ms. Lockwood stated that Mr. Kruesi's property was listed in OMMP's database as a grow site for eleven patients, which would provide authority to grow 66 mature marijuana plants. Ms. Lockwood stated that OMMP was approximately five weeks behind on data entry for new patients and changes to existing registry identification card holders.

27.

OMMP was significantly more than five weeks behind on data entry for new patients and changes to existing card holders. Certified mailing records indicate that OMMP was nine to ten weeks behind on their data entry.

28.

There were four pending applications for Mr. Kruesi's property. The applications were renewals, not new patient applications. Pursuant to the OMMA, a pending application shall have the same legal effect as an approved application until such time as the applicant receives notification that it has been approved or denied. (ORS 475.309(9).

29.

Deputy Davis believed that the number of plants growing on Mr. Kruesi's property exceeded the legal amount of plants. Deputy Davis prepared an affidavit requesting a search

warrant. The affidavit only mentioned one residence on the property. The affidavit noted that Deputy Davis believed that there were 87 plants growing on Mr. Kruesi's property based on a count of the total number of plants visible from aerial photographs.

30.

On September 7, 2012, Linn County Circuit Court Judge James Egan signed a search warrant authorizing the search of Mr. Kruesi's property.

31.

On September 12, 2012, the search warrant was executed by Deputy Davis and Detectives Snippen and Campbell, as well as Detectives Randy Voight, Scott Christensen, and John Trahan of Linn County Sheriff's Office.

32.

At approximately 12:00 p.m. two officers from Linn County Sheriff's Department arrived to the front gate of Mr. Kruesi's property. They were not wearing uniforms. The officers initiated conversation with other residents of the property. Mr. Kruesi approached the gate and spoke with the officers for as much as five minutes before the officers identified themselves as law enforcement officers. One officer told Mr. Kruesi that they "could roll over the gate and put everyone on their faces and drag them out." Mr. Kruesi felt intimidated by the statement. Mr. Kruesi opened the gate and allowed the officers on to his property to execute the search warrant.

33.

The officers entered the property and conducted an initial sweep of the residence, gardens, outbuildings and camp trailers located on the property. At this time, the officers learned that there were three separate occupied residences on the premises. Detectives Campbell and Snippen located two men and one woman on the property in a travel trailer. They brought these

three residents to the front of the property detained them, and read them their Miranda rights. The residents indicated that they were either patients or growers and had the paperwork to support that. Paperwork was provided to the officers. Several cellphones belonging to the residents were either searched or seized by various officers.

34.

During the initial sweep of the property, Detective Campbell wrongfully seized a receipt book from a counter in Mr. Kruesi's residence. There were piles of papers on the countertop. The receipt book was not in plain view.

35.

Deputy Davis spoke to Mollie at OMMP on the phone at approximately 12:20 pm. She told Deputy Davis that the property had 15 patients for whom marijuana was being grown, including pending applications. The legal limit of mature marijuana plants for 15 patients is 90 plants.

36.

After the initial sweep of the property, Detective Campbell interviewed Mr. Kruesi privately. Mr. Kruesi stated that he did not want to answer questions without a lawyer. Detective Campbell responded, "What I can do right now, I can face plant your wife, handcuff her and drag her out of here."

37.

Mr. Kruesi informed the officer that the marijuana that was growing on the property was being legally grown and that he had the appropriate paperwork for it, and he provided the officer with paperwork for the eleven confirmed registry identification cards and four pending applications for registry identification cards.

38.

The search of the property began after 1:00 pm and lasted for more than four hours.

39.

During the search Detective Campbell rummaged through Mrs. Kruesi's underwear drawer.

40.

Mr. Kruesi expressed frustration about the length of the search. Deputy Davis told Mr. Kruesi that he was lucky because "you could be in cuffs and on the ground."

41.

Deputy Davis threatened Mr. Kruesi that the officers "could bring in the feds".

42.

Detective Campbell located five separate areas where marijuana was being grown on the property and searched each of them.

43.

The first grow area was a garden on the west side of the property which contained 63 plants.

44.

The second grow area was in a room located in the front shop of the south side of the property. This area contained 7 plants.

45.

The first two grow areas belonged to the Jefferson Collective farm.

46.

The third grow area was in a horse barn on the north side of the property which contained

only immature plants.

47.

The fourth grow area was in an outdoor garden outside of the horse barn. This area contained 24 mature plants.

48.

The fifth grow area was in a Prowler travel trailer located adjacent to the outdoor garden. This area contained 4 mature plants.

49.

The third, fourth, and fifth grow areas belonged to a separate farm on the property, not operated by Mr. Kruesi or the Jefferson Cooperative.

50.

Detective Campbell was advised by Deputy Davis that they would seize 13 plants from the west garden and front shop grow room. Additionally, Davis told Campbell to seize 18 mature plants from the garden next to the Prowler trailer, as well as all plants from inside the trailer.

51.

Detective Trahan seized a Ruger .22 caliber pistol from a dresser drawer that was in the master bedroom of Mr. Kruesi's residence. The pistol belongs to Mrs. Kruesi. The pistol is worth approximately $400. A 44 Magnum Marlin rifle belonging to Mrs. Kruesi was also seized. The rifle is worth approximately $600. Mrs. Kruesi filed a motion for the return of her firearms on November 12, 2012 but they have not been returned to her.

52.

Deputy Davis arrested Mr. Kruesi in his home, on charges of two felony counts of

Unlawful Manufacture of Marijuana and two felony counts of Unlawful Delivery of Marijuana. One count for each of the charges were listed as commercial offenses. Based on inaccurate information provided by the deputies to the district attorney, Mr. Kruesi was indicted and prosecuted for these crimes. Mr. Kruesi had to hire a lawyer to defend him, at a cost of $15,000.

53.

Mr. Kruesi was told that 18 plants were being seized because he could not grow medical marijuana as a result of the charges that were being placed on him at that time. Officers seized patient registry identification cards for Mr. Kruesi, his mother Delores Hattan, and Paul Davis. The three cards allow a total of 18 plants.

54.

Deputies Davis, Campbell and Snippen returned to the Linn County Sheriff's Office around 9:30 p.m. that evening with the seized marijuana plants.

55.

Sometime thereafter, the officers destroyed many or all of the mature marijuana plants that they had seized.

56.

Photographs taken of Mr. Kruesi's property during the search were released to local media outlets. Those pictures appeared in local newspapers alongside articles detailing the police operation. The article in the Albany Democrat Herald listed the address of Mr. Kruesi's property.

57.

Judge Daniel Murphy issued a Findings of Fact and Ruling on April 25, 2014 in the Circuit Court for Linn County. In that ruling the judge allowed Mr. Kruesi's Motion to Suppress

all evidence seized during the search after the initial sweep because officers learned in that sweep that there were multiple residences on the premises. In that sweep, the officers learned that they could not rely in good faith on the warrant. The charges against Mr. Kruesi were subsequently dismissed on July 9, 2014.

58.

A record of the arrest of Mr. Kruesi and the charges recommended by the arresting officer remain in sheriff's department records and Linn County court records. These records are accessible to law enforcement agencies and the public.

## FIRST CLAIM FOR RELIEF:

**Unreasonable Search and Seizure Without a Valid Warrant or Other Authority, in Violation of the Fourth Amendment; arising under 42 U.S.C. 1983 (against Deputy Davis and Detectives Snippen and Campbell).**

59.

All preceding paragraphs are incorporated by reference herein.

60.

In taking the actions described above, including searching the multiple dwellings, buildings and gardens on Mr. Kruesi's property; taking several hundred photographs; seizing evidence; and detaining residents, Davis, Campbell and Snippen violated the rights of Mr. Kruesi and Mrs. Kruesi guaranteed by the Fourth Amendment to the United States Constitution to be free from unlawful searches and seizure by public officials.

61.

A cause of action for these violations of constitutional rights is provided by 42 U.S.C. § 1983.

62.

During the initial safety sweep of Mr. Kruesi's property, Deputy Davis and Detectives Snippen and Campbell learned that there were multiple residences on the property. At this point, the officers knew that the warrant lacked the particularity required by the Fourth Amendment in its description of the place to be searched. Prior to the search, officers knew that there were multiple buildings on Mr. Kruesi's property. If the officers were intent on searching the premises, they should have returned to a magistrate and applied for additional search warrants that included more detail about the places to be searched after the officers realized that there were three different groups of people living in three different dwellings and that these individual groups controlled, to some degree, their dwelling and cartilage where the marijuana was growing. All of the search and seizure that occurred from that point forward was unlawful.

63.

The injuries are described below in the section titled Damages, and incorporated by reference herein.

/// /// ///

/// /// ///

/// /// ///

## SECOND CLAIM FOR RELIEF

## Unreasonable Seizure of Property Without a Valid Warrant or Other Authority, in Violation of the Fourth Amendment; arising under 42 U.S.C. 1983 (against Deputy Davis and Detectives Snippen and Campbell).

64.

All preceding paragraphs are incorporated by reference herein.

65.

A cause of action for these violations of constitutional rights is provided by 42 U.S.C. § 1983.

66.

None of the information that Deputy Davis and Detectives Snippen and Campbell obtained pursuant to the unlawful search of Mr. Kruesi's property can provide a lawful basis to seize property.

67.

Without this information Deputy Davis and Detective Campbell lacked probable cause to believe that the property that they seized was evidence of a crime.

68.

The injuries are described below in the section titled Damages, and incorporated by reference herein.


///        ///        ///

///        ///        ///

///        ///        ///

## THIRD CLAIM FOR RELIEF

## Arrest Without Probable Cause in Violation of the Fourth Amendment; arising under 42 U.S.C. 1983 (against Deputy Davis and Detectives Snippen and Campbell).

69.

None of the information that Deputy Davis and Detectives Snippen and Campbell obtained pursuant to the unlawful search of Mr. Kruesi's property can provide a lawful basis to seize property.

70.

Without this information Deputy Davis and Detective Campbell lacked probable cause to arrest Mr. Kruesi.

71.

The injuries are described below in the section titled Damages, and incorporated by reference herein.

## FOURTH CLAIM FOR RELIEF

## Due Process Violation; arising under 42 U.S.C. 1983 (against Deputy Davis, and Detectives Snippen and Campbell).

72.

All preceding paragraphs are incorporated by reference herein.

73.

Detectives seized Mr. Kruesi's plants for a punitive purpose.

74.

The plants were seized without a hearing.

75.

The plants were destroyed without a hearing.

76.

There was no significant risk to the State or Linn County in delaying seizure and/or destruction of the plants so that a hearing could be provided to Mr. Kruesi.

77.

Mr. Kruesi faced a serious risk that he would lose his property interest in the plants if they were seized and/or destroyed wrongfully. There was a high risk that Mr. Kruesi would not have his plants returned to him even if the plants had been seized wrongfully. There would be an irreversible harm done to the plants and Mr. Kruesi's interest in them.

78.

Lacking a pre-seizure hearing, there were no additional procedural safeguards to protect Mr. Kruesi's interests.

79.

A hearing would have been in the public interest. A hearing would have protected Mr. Kruesi's interests as well as the interests of all medical marijuana growers and patients in Oregon. The cost of delaying the seizure and/or destruction of the plants in order to provide a hearing would have been negligible.

80.

As a result of the seizure and destruction of his plants without a hearing, Mr. Kruesi suffered from emotional distress and anxiety, included in the emotional distress listed below in the section titled Damages.

81.

As a result of the seizure and destruction of his plants without a hearing, Mr. Kruesi suffered the economic damages for the loss of his plants described below in the section titled Damages.

82.

Mr. Kruesi also claims nominal damages for this due process violation.


**FIFTH CLAIM FOR RELIEF**

**Trespass (against Linn County for the conduct of its agents, including but not limited to Deputy Davis, Detectives Snippen and Campbell).**

83.

All preceding paragraphs are incorporated by reference herein.

84.

Deputy Davis and Detectives Snippen and Campbell had no lawful reason to enter Mr. Kruesi's property.  They stayed on Mr. Kruesi's property for several hours and conducted an intrusive search of every part of the property.

85.

Injuries are described below in the section titled damages, and incorporated by reference herein.


///     ///     ///

///     ///     ///

///     ///     ///

**SIXTH AND SEVENTH CLAIMS FOR RELIEF**

**Conversion and Intentional Interference with Economic Relations (against Linn County for the conduct of its agents, including but not limited to Deputy Davis, Detectives Snippen and Campbell).**

86.

All preceding paragraphs are incorporated by reference herein.

87.

Mr. Kruesi was the lawful owner of six marijuana plants that he was growing to treat his own medical condition. Mr. Kruesi a lawful contract and economic relationship with two other patients of OMMP. The 18 seized plants were being grown for Mr. Kruesi, his mother Delores Hattan, and Paul Davis.

88.

Mr. Kruesi is entitled, under the OMMA, to receive compensation for the costs of supplies and utilities associated with the production of the marijuana under ORS 475.304(7). The patients for whom Mr. Kruesi was growing marijuana had agreed to and would have provided this compensation to Mr. Kruesi.

89.

Because Mr. Kruesi did not have marijuana to deliver to the patients, the patients did not fully compensate him for the costs of supplies and utilities. Both of Mr. Kruesi's other patients received less than the full amount of the medical marijuana they were entitled to, one of them received none.

90.

None of the information that Deputy Davis and Detectives Snippen and Campbell

obtained pursuant to the unlawful search of Mr. Kruesi's property can provide a lawful basis to seize property.

91.

Deputy Davis and Detective Campbell lacked probable cause to believe that the property seized was evidence of any crime.

92.

The officers knew or should have been substantially certain that seizing marijuana plants from Mr. Kruesi's property would interfere with his contracts or economic agreements with OMMP patients.

93.

Mr. Kruesi's seized plants were destroyed.

94.

As a result of the seizure and destruction of his plants, Mr. Kruesi suffered emotional distress and anxiety, included in the emotional distress listed below in the section titled Damages.

95.

As a result of the unlawful search and seizure of Mr. Kruesi's plants, Mr. Kruesi suffered the economic damages for the loss of his plants described below in the section titled Damages.

96.

Injuries are described below in the section titled Damages, and incorporated by reference herein.

## EIGHTH CLAIM FOR RELIEF

## Negligence (against Linn County for the conduct of its agents, including but not limited to Deputy Davis, and Detectives Snippen and Campbell).

97.

All preceding paragraphs are incorporated by reference herein.

98.

In taking the actions described above, Deputy Davis, and Detectives Snippen and Campbell, and other persons employed by the Linn County Sheriff acted or failed to act in the following particulars with the degree of care appropriate for their offices. Their conduct caused Mr. and Ms. Kruesi to suffer an unlawful search of their residence and premises and unlawful seizure of their property, and caused Mr. Kruesi to be unlawfully arrested and prosecuted.

a. Failing to re-contact OMMP between September 6, 2012 and the beginning of the execution of the search warrant on September 12, 2012 to determine whether any new patient registry identification cards had been issued for growing marijuana for those patients at 35871 Jefferson Scio Drive after September 6th;

b. Failing to stop the search on September 12th upon learning that there were multiple residences on the premises;

c. Failing to stop the search and the seizure of property on September 12th upon learning from Mr. Kruesi and from OMMP that there were valid patient registry identification cards or valid pending applications for the lawful growing of marijuana for 15 patients on the premises;

d. Failing to follow the law in seizing and reading a document described as a receipt book in the Kruesi's home;

e. Drawing unreasonable inferences about the information contained in the document described as a receipt book seized in Mr. Kruesi's home;

f. Detaining the Kruesi's without lawful authority;

g. Attributing marijuana plants grown on the separate premises at 35871 Jefferson Scio Drive by people operating a separate grow operation to Mr. Kruesi and/or the Jefferson Collective.

h. Arresting Mr. Kruesi without probable cause and charging him with the crimes listed above;

i. Allowing local newspapers including the Albany Democrat Herald to obtain photographs and inaccurate information about Mr. Kruesi, his property, and the search and seizures that occurred on his property on September 12, 2012.

j. Providing inaccurate information to the Linn County District Attorney and the Linn County Court.

99.

Injuries are described below in the section titled Damages, and incorporated by reference herein.

**DAMAGES**

**All Claims**

100.

As a result of the unlawful search and seizure of Mr. Kruesi's property and the repeated threats made by the officers, Mr. and Mrs. Kruesi suffered and continue to suffer from emotional distress.

101.

Mr. and Mrs. Kruesi have sought counseling services to deal with the trauma induced by the search at a cost of $3000.

102.

Mr. Kruesi has had to pay $15,000 in attorney fees for his criminal defense.

103.

Mr. Kruesi's property that was seized as evidence has not been returned to him.

104.

Ms. Kruesi's property that was seized as evidence has not been returned to her, including but not limited to her two firearms

105.

Mr. Kruesi was in lawful possession of harvested medical marijuana that the officers seized as evidence. He lost the full value of this marijuana.

106.

The value of seized property belonging to Mr. and Ms. Kruesi, other than marijuana plants and harvested marijuana, is worth approximately $1,000.

107.

Mr. Kruesi has been unable to gain employment due to the criminal charges that were pending against him.

108.

As a result of the pictures released to local media by members of the Linn County Sheriff's Department, and the stories that accompanied the pictures, Mr. and Mrs. Kruesi

suffered from stress and the stigma of prosecution.

109.

As a result of the unreasonable arrest of Mr. Kruesi, he suffered from the emotional distress of being arrested, booked, cited, and prosecuted.

110.

As a result of the seizure and subsequent destruction of marijuana plants, Mr. Kruesi cannot obtain reasonable costs associated with the supplies and utilities associated with the production of the plants from medical marijuana patients for whom he was growing them.

111.

Mr. Kruesi was in lawful possession of marijuana plants that were seized. He lost the full value of these plants.

112.

As a result of Mr. Kruesi's plants being destroyed without a hearing, he suffered emotional distress.

113.

The emotional harm to Mr. and Mrs. Kruesi in the form of shock, confusion, humiliation, and stress for all of the reasons described above are valued at $80,000.

114.

Mr. Kruesi is planning to expunge the record of the arrest and charges from his record but has not done so yet. The cost is projected to be approximately $600.

///      ///      ///

**MISCELLANEOUS**

**All Claims**

115.

Mr. and Mrs. Kruesi are entitled to attorney fees and costs pursuant to 42 U.S.C. 1988.

116.

Plaintiffs request a trial by a jury of their peers on their claims for relief.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray for judgment as follows:

1. Noneconomic damages in the amount of $80,000 to compensate them for shock, confusion, humiliation, and stress;

2. Economic damages in the amount of $54,000 for the reasonable costs of supplies and utilities associated with the production of the marijuana plants that were seized and destroyed, and/or the value of these plants;

3. Economic damages in the amount of $1,000 for other property including but not limited to the two firearms that were seized in the course of the search;

4. Economic damages in the amount of $1,500 for harvested marijuana seized as evidence;

5. Economic damages in the amount of $3,000 for the money spent on counseling;

6. Economic damages in the amount of $15,000 for the attorney fees that Mr. Kruesi spent to defend himself against criminal charges;

7. Economic damages in the form of $100,000 for lost wages;

8. Economic damages in the amount of $600 for expunging the records of arrest and charges from Mr. Kruesi's record, consisting of attorney fees, filing fees, and Oregon State Police fees;

9. Plaintiff's costs, disbursements and attorney fees.

DATED and signed on this 12th day of September, 2014.

*/s/ Benjamin Haile*

_____

Benjamin Haile, OSB # 04066
Attorney at Law