UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LOREN and VALERIE KRUESI,                                      6:14-CV-1465-TC

Plaintiff,

v.                                    FINDINGS AND RECOMMENDATION

LINN COUNTY, a municipal corporation; and
BRUCE DAVIS; DAVID SNIPPEN; and
RICK CAMPBELL, individuals in their
individual capacities,
                                    Defendants.

COFFIN, Magistrate Judge:

This case implicates the Oregon Medical Marijuana Program (OMMP) and its juxtaposition with

state legislation that otherwise criminalizes the manufacture and distribution of marijuana. Plaintiffs

are residents of rural property in Linn County, Oregon which they registered as a medical marijuana

grow operation with OMMP, which is charged with administering the Oregon Medical Marijuana

Act (OMMA) .   The Act recognizes the medicinal value of marijuana (ORS 475.300), creates a

mechanism for registering marijuana grow sites (ORS 475.304) and medical marijuana users and

excepts registered growers and users from criminal prosecution if they are in compliance with the

Page 1 - FINDINGS AND RECOMMENDATION

Act (ORS 475.309). The immunity from criminal prosecution also applies to those whose applications have been submitted to OMMP and are pending action by the administrative agency. If an application is ultimately denied by OMMP, the immunity lapses when notice of the denial is received by the applicant. ORS 475.309(9).

On September 12, 2012, Linn County law enforcement officials executed a search warrant that had been issued by a Linn County Circuit judge on plaintiffs' property, which resulted in the seizure of a portion of plaintiffs' marijuana grow and subsequent filing of state criminal charges against Loren Kruesi. The criminal charges have since been dismissed and plaintiffs have filed this civil rights action pursuant to 42 U.S.C. §1983 challenging the validity of the warrant and search, asserting violations of their 4th Amendment rights, and seeking damages and injunctive relief. Before the court is defendants' motion for summary judgment on all of plaintiff's claims.

### Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence

of all facts material to the claim. Id. ; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

The search warrant in this case was based largely on information obtained by law enforcement during a helicopter overflight of plaintiffs' property on August 30, 2012. From their vantage point, deputies observed and photographed two outdoor marijuana gardens on the premises and subsequently identified the site address from County records (35871 Jefferson Scio Drive, Jefferson, Oregon) . Detective Bruce Davis counted a total of 87 growing marijuana plants in the gardens and contacted OMMP to learn whether the property was registered as a grow site, and was informed that the site was a registered grow site for 11 patients. As the OMMA authorizes 6 plants per patient, only 66 plants would have been permissible at the site for the number of patients on record with OMMP.

Page 3 - FINDINGS AND RECOMMENDATION

Davis thus concluded that the property was growing more plants than authorized and was not in compliance with the OMMA and applied for a warrant to search the premises for evidence of violations of state law pertaining to the manufacture and possession of marijuana.[1]

As stated previously, defendants executed the warrant on September 12, 2012. As a result of the search of the premises, evidence was discovered with both exculpatory and inculpatory implications for the plaintiffs. Thus, plaintiffs produced documentation of pending applications for patients which had not been approved by OMMP at the time the warrant was issued. Deputies eventually determined that the grow site was an authorized grow site for 15 patients. This translated into 90 authorized plants, or three more than the 87 described in the affidavit in support of the warrant. On the other hand, the search uncovered other gardens not observed in the overflight, increasing the total number of plants on the site to 95 (still over the limit, but by a smaller margin).

The key claim by plaintiffs in this action is that the affiant (Defendant Davis) deceived the state judge who issued the warrant by making misrepresentations and omitting material information in his applications. I find, however, that the affidavit was not misleading and that the issuing judge was adequately informed of all material information.

The issuance of a search warrant is generally reviewed deferentially and should be upheld if the issuing judge has a substantial basis for concluding that probable cause existed based on the totality of circumstances. Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir. 2009). There

---

[1]Although the defendants contend that the grow "violated Oregon and federal law" the application was for a state search warrant, was made to a state circuit judge, was premised on the grow site containing more plants than permitted under the Oregon Medical Marijuana Act, and the warrant was executed solely by state law enforcement officers. Thus federal law, which does not provide a safe harbor for medical marijuana growers, is not implicated in this case. See, United States v $186, 416 in U.S. Currency, 590 F.3d 942 (9th Cir. 2009).

Page 4 - FINDINGS AND RECOMMENDATION

is a presumption of validity with respect to the affidavit supporting the search warrant. <u>Franks v.</u>
<u>Delaware</u>, 438 U.S. 154, 171 (1978). A search warrant is valid if it states the place to be searched,
the things to be seized , and is not constitutionally overbroad.   <u>United Stated v. Kynaston</u>, 534 Fed.
Appx. 624 , 625 (9th Cir. 2013).   A misrepresentation based on an omission is material only where
the omitted facts cast doubt on the  existence of probable cause. <u>Crowe v. County of San Diego</u> ,
608 F.3d 406, 435 (9th Cir. 2010). To survive summary judgment on a claim for judicial deception,
a §1983 plaintiff must : 1) establish that the warrant affidavit contained misrepresentations or
omissions material to the finding of probable cause, and 2) make a substantial showing that the
misrepresentations or omissions were made intentionally or with reckless disregard for the truth.
<u>Bravo v. City of Santa Maria</u>, 665 F.3d 1076, 1083 (9th Cir. 2011).   Once he has probable cause, an
officer is not ordinarily required to continue to investigate or seek further corroboration.   <u>Ewing</u> ,
588 F.3d at 1227.

Plaintiffs' main quarrel centers on the fact that OMMP had a backlog in the processing of
applications submitted by medical marijuana growers and   patients and   hat plaintiffs had
applications in the system that had not been acted upon at the time Davis submitted his affidavit.
However, Davis expressly included the following information in the affidavit:

> I know that the address of 35871 Jefferson Scio Drive, Jefferson,
> Oregon had twenty [sic] (21) more mature marijuana plants than
> lawfully allowed to have.   [The OMMP employee] told me that
> OMMP is approximately five weeks behind on data entry for all new
> patients and changes to existing card holders.

P. 9 of Affidavit for Search Warrant, attached to #32 (emphasis supplied)  .

Moreover, previously in the Warrant Affidavit,  Davis disclosed :

> I know from my experience that sometimes the Oregon Department of Health Medical Marijuana division is behind in processing applications..... There have also been times that marijuana plants have been seen on property in excess of what OMMP stated was listed as a grow site for and the growers and/or patients have provided accurate paperwork for the excess marijuana plants.

Id. at p. 2 (emphasis supplied).

Although plaintiffs may have preferred different language and even a different mode of investigation (i.e., a "knock and talk" as opposed to the execution of a search warrant) the fact is that the reviewing judge was fully informed that there was a backlog and that there could be additional applications pending that OMMP had yet to process and which would have a bearing on whether the grow site was or was not in compliance with the OMMA.

Plaintiffs' preference for different investigatory approaches, such as a "knock and talk" [2] is not constitutionally required and has the obvious downside of alerting the grower to a criminal investigation in advance of having any lawful authority to enter the premises and seize evidence of illegal activity.

It is ironic that the dilemma presented here is born of the State's implementation of a program to decriminalize the growing, distribution, and possession of marijuana on behalf of medical marijuana patients. Had this been a federal search warrant, obtained from a federal judge and executed by federal agents to seize marijuana grown in violation of federal law, the OMMA would

---

[2] The OMMP database tracks grow sites by street address. Growers, however, are required to have the names and paperwork for patients they are growing for at the site. Hence, a "knock and talk" could arguably clarify whether the growers had applications pending for new patients with OMMP.

be legally irrelevant.[3]  And even though federal law is not implicated in this civil rights action, it cannot be ignored or dismissed entirely from the exercise of analyzing the State's program and attendant enforcement mechanisms.  In essence, Oregon is establishing and overseeing a marijuana medication system in a legal environment which has a tradition of prohibiting the drug's cultivation and distribution.  There is a potential for abuse of the OMMP should registered grow sites produce plants in excess of the number permitted for approved patients with the surplus being sold on the black market.    In analogous settings, courts have recognized that Fourth Amendment "reasonableness" requirements for searches and inspections can be met even without judicial warrants and showings of probable cause in "closely regulated " industries where there is a substantial government interest in the regulatory scheme.  See, Colonnade Catering Corp. V. United States, 397 U.S. 72, (1970) (upholding warrantless search and seizure pursuant to regulations governing the liquor industry);  United States v. Biswell, 406 U.S. 311 (1972) (no constitutional violation when a business which sold firearms was subject to inspections and seizure without a warrant issued by a judicial officer upon probable cause) ; United States v. Argent Chemical Laboratories Inc., 93 F.3d 572 (9th Cir. 1996) (applying Colonnade-Biswell exception to search warrant requirement for closely regulated industries to uphold seizure of veterinary drugs from a manufacturer pursuant to in rem warrant issued without intervention of judicial officer or showing of probable cause).

---

[3]As an aside, I note that at the hearing on the motion for summary judgment counsel for plaintiffs referred to marijuana plants being grown pursuant to the OMMA as "protected plants." Technically, however, the OMMA does not protect plants, it excepts or immunizes growers from state criminal prosecution if they are in compliance with the Act.  It does not, nor could it, immunize the growers from federal prosecution.

All this is to say, as the courts have recognized,  that persons who engage in pervasively regulated industries have a diminished expectation of privacy.  New York v. Burger, 482 U.S. 691, 702 (1987); United States v. Argent Chemical Laboratories, Inc., supra, at 575.  And it only adds to that diminished expectation to observe that federal law conflicts with the OMMA and OMMP and that all that protects Oregon medical marijuana growers (even those who are in compliance with the OMMA) from federal warrants and seizures is executive discretion by federal authorities in the enforcement of federal law.  As noted in a document entitled Memorandum For All United States Attorneys authored by Deputy Attorney General James M. Cole, dated August 29, 2013:

> The Department's previous memoranda specifically addressed the exercise of prosecutorial discretion in states with laws authorizing marijuana cultivation and distribution for medical use.   In those contexts, the Department advised that it likely was not an efficient use of federal resources to focus enforcement efforts on seriously ill individuals, or on their individual caregivers.   In doing so, the previous guidance drew a distinction between the seriously ill and their caregivers, on the one hand, and large scale, for profit commercial enterprises on the other, and advised that the latter continued to be appropriate targets for federal enforcement and prosecution.  In drawing this distinction, the Department relied on the common-sense judgment that the size of a marijuana operation was a reasonable  proxy for assessing whether marijuana  trafficking implicates  the federal enforcement priorities set forth above.

> As explained above, however, both the existence of a strong and effective state regulatory system, and an operation's compliance with such a system, may allay the threat that an operations's size poses to federal  enforcement  interests.    Accordingly,  in  exercising prosecutorial discretion, prosecutors should not consider the size or commercial  nature of a marijuana operation alone as a proxy for assessing whether marijuana trafficking implicates the Department's enforcement  policies listed above.  Rather, prosecutors should continue to review marijuana cases on a case-by-case basis and weigh

all available information and evidence, including, but not limited to,
whether the operation is demonstrably in compliance with a strong
and effective state regulatory system.   A marijuana operation's large
scale or for-profit nature may be a relevant consideration for assessing
the extent to which it undermines a particular federal enforcement
policy.

. . . .

As with the Department's previous statements on the subject, this
memorandum is intended solely as a guide to the exercise of
investigative and prosecutorial discretion.  This memorandum does
not alter in any way the Department's authority to enforce federal
law,  including federal laws related to marijuana, regardless of state
law.  Neither the guidance herein nor any state or local law provides
a legal defense to a violation of federal law, including any civil or
criminal violation of the CSA.  Even in jurisdictions with strong and
effective regulatory systems, evidence that particular conduct
threatens federal priorities will subject that person or entity to federal
enforcement action, based on the circumstances.

(Emphasis supplied).[4]

I point all this out for a reason — plaintiffs urge semantical nuances in the reading of the search

warrant affidavit herein and the substitution of their edited version in advocating a "judicial

deception " basis to invalidate the warrant.   They also complain about the OMMP database being

limited to addresses of grow sites, not being amenable to searches by names of patients whose

applications are pending, and being less than 100% current because of a backlog in the processing

of applications.  However, the affidavit did not mislead or deceive the judge.  The backlog was

disclosed as was the fact that there had been instances when growers produced more accurate

paperwork during searches that demonstrated compliance with OMMP. The issuing judge was fully

advised of any defects in the database and could have insisted upon further  investigation before

---

[4]Memorandum from James M. Cole, Deputy Attorney General, for all United States Attorneys (August 29,
2013) (available at  http://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf).

Page 9 - FINDINGS AND RECOMMENDATION

issuing the warrant. There was no deception in the information submitted to him. The State could have constitutionally implemented an enforcement mechanism that does not even require judicial warrants or showings of probable cause to inspect registered grow sites to ensure compliance with the OMMA and OMMP. That compliance is instead enforced through the traditional method of judicial warrants based on probable cause to believe a criminal violation of the State's marijuana code is being committed confers greater protection on the growers than the Constitution requires. I decline to expand that protection even further by engaging in plaintiff's invitation to edit and re-write the affidavit to reflect the language their counsel would have submitted on their behalf.

Plaintiffs also contend that the helicopter flight over their property was at a low elevation such that their 4th Amendment privacy interests were violated and that Davis made a false statement in his affidavit when he averred that "digital photographs of the surrounding property and the marijuana plants [were taken when] we were flying in excess of eight hundred (800) feet above ground level." In support of this contention, they submit the declaration of Joshua Cohen, an engineer and visual presentation expert, who analyzed the photographs taken during the overflight and selected 3 of the photographs to create a diagram in which he opined that the helicopter was at 494 feet, 373 feet, and 366 feet when the photos were taken.

Even assuming that Cohen's calculations are correct, such neither shows that Davis' statement was intentionally or recklessly false, nor that it was material to the issue of probable cause.

The court takes judicial notice that FAA regulations generally limit fixed winged aircraft to an elevation of 500 feet or higher over sparsely populated areas[5] except when landing or during take

---

[5]The minimum is 1,000 feet over congested areas.

off, but do not apply those limits to helicopters, instead allowing them to fly at lower than 500 feet if their operation is conducted without hazard to person or property.    14 CFR 91.119.   The photographs demonstrate that plaintiffs' property is rural, open farmland with a few structures. There is no evidence that the elevations calculated by plaintiffs' expert would support a finding that the operation of the helicopter presented some sort of hazard to persons or property below.  Nor can I conclude that occupants of a helicopter, flying at an altitude specifically authorized by FAA regulations, unconstitutionally violate the privacy interests of property owners below. See Florida v. Riley, 488 U.S. 445, 451 (1989) . (finding helicopter flight surveillance at 400 feet elevation does not violate Fourth Amendment).    This is open farmland, and there was no incursion into the home or curtilage. Although plaintiffs cite Van Strum v. Lawn, 927 F.2d 612 (9th Cir. 1991) , an unpublished memorandum opinion, for the proposition that low level overflights may support a civil rights claim for invasion of privacy, unpublished dispositions and orders of the Ninth Circuit Court of Appeals are not precedent.  C.A. 9 Rule 36-3(a).  Even if it could be precedent, the facts therein are readily distinguishable.  As the panel in that case observed, "if appellants' allegations are taken as true, appellees' operation of a helicopter 100 feet over their house for a period of one-half hour in a manner which could induce fruit to fall, animals to stampede and injure themselves, and considerable psychological trauma on children, clearly constitutes a violation of appellants fourth amendment rights."  No such egregious facts are present here.  At best, plaintiffs' own expert calculates elevations consistent with that in Florida v. Riley, supra .  Thus, the minor disparity between Davis' estimate and Cohen's is simply not material to the existence of probable cause.

Next, plaintiffs contend that defendant Davis' affidavit is deficient in its description of the location of the property to be searched.  In his affidavit, Davis described the property as follows:

Page 11 - FINDINGS AND RECOMMENDATION

The property, curtilage, residences, outbuildings, recreational vehicle and vehicles located at 35871 Jefferson Scio Drive, Jefferson, Linn County, Oregon. More specifically, the residence is described as a triple wide manufactured home which is painted off white with brown trim. There is an elevated porch leading to the front door on the south side of the residence. There are two outbuildings and a portion of a former residence on the property. There are three recreational vehicles and several other vehicles parked on the property. There is a metal gate across the driveway with a sign that says, "Posted No Trespassing" in red letters. There is a mailbox with the numbers "35871" posted on it across Jefferson Scio Drive from the residence. The Linn County Assessor's Office has this property listed as being account number 34930 and map number 10S02W080000300.

Plaintiffs essentially argue that Davis should have added language to the effect that the three recreational vehicles "may be separate residences."

But plaintiffs cite no evidence that Davis had information that the owners of the subject property were leasing the RVs to tenants, the property was not subdivided, the property at issue was a single lot with one mailing address and one permanent home structure. Any inference that the RVs "may be" occupied by renters is as apparent to the judicial officer as it is to the detective. There was no judicial deception in Davis' description. Furthermore, as defendants point out, generally "a warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect." United States v. Alexander, 761 F.2d 1294, 1301 (9th Cir. 1985). Here, the entire property was a registered grow site and the RVs were structures on the site. Furthermore, if there were tenants in the RVs that were not affiliated with the grow operation of the plaintiffs, it is they, and not plaintiffs, whose privacy interests were affected. Plaintiffs have no standing to assert any

Page 12 - FINDINGS AND RECOMMENDATION

4th Amendment claims on behalf of any occupants of RVs on the property other than themselves.
Alderman v. United States, 394 U.S. 165, 174 (1969).

Finally, plaintiffs bring claims under Monell v. Dept. of Soc. Serv. of City of New York, 436
U.S. 658 (1978) against Linn County based on an alleged policy of failing to investigate and include
material information in the search warrant affidavit and an alleged policy of failing to adequately
train its detectives in how to conduct marijuana investigations.

In view of my finding that no constitutional violation has occurred, there can be no Monell
liability against Linn County. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Palmerin
v. City of Riverside, 794 F.2d 1409, 1414 (9th Cir. 1986) ("absent any constituional violations by the
individual defendants, there can be no Monell liability") ; Segal v. City of New York, 459 F.3d 207,
219 (2d Cir 2006) ("Monell does not provide a separate cause of action for the failure by the
government to train its employees; it extends liability to a municipal organization where that
organization's failure to train, or the policies or customs that it has sanctioned, led to an independent
constitutional violation.")    Accordingly, the Monell claims fail for lack of an underlying
constitutional violation.

## Conclusion

For the reasons, set forth above, defendants' motions (#25 and #30) for summary judgment should be allowed and this action should be dismissed.

DATED this __11__ day of September, 2015 .


THOMAS M. COFFIN

United States Magistrate Judge